22-1600 Mirror Worlds v. Meta Platforms. Mr. Liddell. Thank you, Your Honor. Good morning, and may it please the Court, Brian Liddell for Mirror Worlds Technologies. We're here for the second time in this specific case because the District Court twice made the same error. It misapplied the standards for summary judgment mandated by the Supreme Court, by this Court, by Rule 56, and frankly by the Seventh Amendment. That it improperly weighed the evidence and it failed to draw inferences in favor of the non-movement, and instead expressly drew inferences and construed the evidence in the light provided by the movement and the movement's witnesses, and credited their evidence without, in many instances, even considering evidence provided by Mirror Worlds and opposition. Can you tell me what part of your argument is independent of your challenge to the claim construction on data unit, independent of the collection challenge and of the glance view? Absolutely, Your Honor. So there are two accused systems. There's what's referred to in the papers as the timeline system. And the multi-feed system. And those are all the back-end systems. Those are both back-end systems, correct. So there's the timeline back-end system and the multi-feed back-end system. As to the timeline back-end system, our argument about summary judgment is there are also claim construction issues, of course, but the summary judgment issues are sufficient to reverse the District Court's decision on that issue. But do I understand correctly that on News Feed, your only argument is dependent on your data unit claim construction? That's correct, Your Honor. As to the News Feed... But for timeline, you say that the three pieces of information that, I think it's three, but you'll correct me, that the District Court said, Facebook said, these come into the system, but they don't go to timeline database. You say that was a factual, that raised a triumphal factual issue. That's correct, Your Honor. This may be wrong, but is that tied to the mainstream claim construction, or is that completely... It is not, because as to the timeline system, there's a factual dispute as to the factual question of whether these pieces of information are in fact received at all by the back-end system. That was a disputed question of fact. There's evidence both ways. The District Court, we submit improperly, basically chose to credit Facebook's evidence and not address properly. Where does your queries don't count contention fit into this? Sure. I would characterize that as an independent reason that would support reversal, certainly as to timeline, where even if you were to credit Facebook's evidence, which, as I said, was disputed, all of that evidence that they point to is query evidence. That would be an independent basis for reversal as to the timeline. Is that a claim construction point? The queries is part of the data unit construction, right? That's correct. It's part of the data unit construction. If, again, if we were to, just for the sake of argument, agree with the District Court's construction of data unit, then the queries thing doesn't save you even on timeline. Is that right? Let me see if I can... Okay. Try and unpack that if you can. Let me see if I can clarify that a little bit. Our position would be that independent of the construction of data unit, queries and interest of the user, there is a...the summary judgment was improper as to the timeline system. I would say that if you were to agree with the District Court on the data unit construction, that would not require reversal of the multi-feed system, non-infringement finding, but the timeline... And the reason you could still prevail and win reversal on timeline isn't because of queries. It's because of those other types of information that you say. That's correct. It's because of other factual disputes about whether that information and whether it's really received by the timeline backend system, the aggregator, as Facebook intends. That was an evidentiary and factual dispute. So my recollection, and I don't, I think, have all the details in my mind at the moment, is that when I looked at your...the evidentiary dispute about these very specific things, so I'm now putting aside all the claim construction...  Right, and plans for you and all of that, that Facebook had evidence that said, here are three things that come into the aggregator that don't get put into the timeline database, the chronologically organized thing. And what you had in response is, I guess I have two categories in my mind. One is some internal Facebook documents that are not focused on those individual things, but saying, here's what generally the timeline database does. And you have a second thing, which is some paragraphs in your expert's declaration that gives some references to pieces of software without, at those places, exactly saying those established that these items either don't go to the aggregator or do go into the timeline database. And then there's a kind of conclusory sentence that says, everything that comes into the aggregator goes into the timeline database. And so it feels like maybe there's a mismatch between the specificity of Facebook's evidence and the generality of yours. Sure, and I think, I guess I would have two responses to that, Your Honor. The first is that the evidence that Mirror World's presented, even if we accept the premise about that, what you've characterized as a sort of disconnect on the specificity, I don't think that the summary judgment standard requires that kind of specificity that you're talking about when you talk about what the evidence is. So the evidence, we presented a number of pieces of evidence that all the information that comes to the backend system is stored in the timeline database. All can mean all. And it's appropriate for a jury to credit that, and a jury gets to weigh the question of, should we interpret that and believe what these documents that were created before litigation by Facebook's engineers about how the system actually works, should we as a jury credit that? Or should we take this testimony, which seems inconsistent with those documents, and credit that? That's a fair dispute for a jury to resolve, but it's not a fair dispute for a court to resolve on summary judgment because you have to draw the inferences about the evidence in Mirror World's favor. And drawing the appropriate inference when the document says, all the data goes into the database, it's an appropriate inference to say all means all, and that a jury can rely on that. And similarly, I would say that the testimony of the expert, Dr. Koskinen from Mirror World, was pretty extensive on everything that comes to the back end system is stored there. And I don't think it needs to sort of then say, well, everything includes this piece and this piece and this piece that they're later going to point to on summary judgment. Why isn't it incumbent in a summary judgment context on him to have done just that? The other side goes first, right? They move for summary judgment and they say there's this requirement that everything that comes into the aggregator go into the system. I'm just using aggregator as a substitute for that. It has to go into the timeline database. Here are three very specific things. Why isn't it incumbent on your expert to say, I'm now going to talk about these three things and I will tell you why they do either not come into the aggregator or do go into the timeline database as opposed to resting on the generalities? Well, I think, I don't think he, so this gets to the second part of your question. The question, my premise, right?  Which is, did he actually have evidence and was there evidence that was specific? So what Facebook talks about in these pieces of information is, it talks about, again, the query to the timeline back end system and suggests that these pieces of information are included in it. But its own documents rebut that assertion, that those aren't pieces of information included. So if we look at, for example, page 14282 of the appendix. 14282? Yes. So this is a Facebook presentation about the timeline system and its architecture. And there's one titled front end.  This page refers to the front end, but I think when we get to the content you'll see why it's important. Okay. So at the top here it talks about the front end generating a request. Now these are the requests that we're talking about that go to the back end. What does it say? It says generates a request for user, start date, and end date. So Facebook's own documents say that the information that goes to the back end is essentially just the start date, the end date, and the identity of the user. Facebook's witnesses argue, no, there's other information. But this says something different and creates a conflict in the evidence about whether what Facebook is asserting is a true assertion of fact. Now they can certainly make that assertion, but it's not something that the district court can simply just choose to accept when there's conflicting evidence. So just, I guess maybe you can explain a little bit more about the context of this. This is a PowerPoint thing. Yes. Why would you read this as saying these are the only requests that can be made, as opposed to here's an example of what's generated, requests for user, start date, end date. There could be lots of other things. I'm just trying to illustrate these. So if we go, I think it's a couple pages further, to 14-285. This is the same presentation. Yes. You'll see that this same request that we talked about just a second ago, this is where it talks about that's the request to the back end. That this is the same, and it's the same thing, the start time, the end time, the user ID. This is evidence that directly contradicts what Facebook contends about these requests. Now, as I said, parties can disagree and have disagreements about how the system works, but it's not the district court's role to resolve those disagreements at summary judgment when there's conflicting evidence. I want to make sure I don't misunderstand your answer to one of Judge Toronto's earlier questions. He characterized it as Facebook points to maybe three types of information that don't get to the back end. And are you acknowledging that your expert fails to show how a reasonable juror could find that those do get to where they need to get? I think two things. One, I think, yes, that there's a conflict in the evidence in so far as what our expert showed was that to the extent that Facebook is suggesting these things come from the user database or the TAO system, there's no showing that there's any pathway for that connection to exist, and that the architecture doesn't support that factually. Second, I don't think there's a showing adequately, although this is less something that our expert focused on, that that's something that's not in the timeline database. On the first point, was that a point that was made by your expert? Yes. He talked about the pathways and these very architecture documents in his report. So the excerpts that he talked about this, you could find at pages 13291 to 292 of the appendix, and continuing basically the whole discussion from 13301 to 310, he had a number of lengthy paragraphs discussing these very points. But I think the piece and part of the evidence that we have here in these various presentations to the extent that Facebook is suggesting that this information is somehow passed from the TAO system to the back end, this court already ruled in the prior appeal. By the back end, you mean to the aggregator? Yes, to the timeline aggregator and the timeline back end system. Do I have the terminology right? The aggregator and the timeline database are both part of the back end system. That's correct. Yes, you're on. Do they fully constitute the back end system? I would say that they are the primary, obviously there's some connectivity and things of that nature, but yes, they are the sort of real components. And everybody agrees TAO is not part of the back end system. That's correct, you're on. It's just another source. It's a different database, yes. And we presented evidence and the court actually agreed with us that in the prior appeal, there was evidence showing that TAO didn't communicate with the back end system. There might be a conflict. Facebook might have some evidence, but there was contrary evidence, and that that was a genuine issue of fact. The district court failed to recognize in deciding the prior summary judgment. The district court basically makes the same error again here, but also with respect to the UDB, the user database, the evidence showed that it's not clear that there's different information stored in that than the timeline back end because there's a lot of information we presented about the right path that shows the synchronization of the two. And so there are flaws both in the, is this information that they're contending really passed to the back end system, and is it really true that it's not stored in the back end system to the extent they're pointing to particular pieces. I think I'm... Yeah, you used all your time. We'll restore some rebuttal. Just one quick question. Sure. I would agree that if we were to agree with some portion of what you're saying, that compels us to reach the alternative basis for affirmance, which would be the 101 issue. I would agree that at that point, it would be appropriate to reach the 101 question, yes. Obviously, we disagree with, we agree with the district court's conclusion. We disagree with Facebook as to the 101. This is also a 101 related question.  I think it maybe is addressed to both sides. So these patents have expired, and in fact, the last of them expired more than six years ago. That is correct, Your Honor. April of 2024, I think, as I calculated, right? That is my understanding. I don't have the precise statement. So if there was non-infringement here... Yes. ...on true non-infringement, not non-infringement because invalidity, is there any stake, from your point of view as the patent owner, that Facebook has in the validity or invalidity of these patents? No, Your Honor. I would agree that that's, and I'm not certain my friend is going to disagree with you on that, but I'll let her speak to it. Facebook can't sue them anymore on these patents? That is correct. That is correct. There could not be a new lawsuit on these patents. Is there any other pending litigation involving these patents? Not that I certainly am not aware of any. I believe the answer is no. Okay. And I'll be happy. I don't know how much my friend wants to speak to 101, but I'll be happy to address it on rebuttal if necessary. Thank you. Good morning. May it please the Court. Heidi Keefe on behalf of Meta. I'll address your last question first because it's very easy. We don't have any stake. If you find that there is no infringement in a firm on that ground, you don't need to address 101 because these patents are not able to be asserted anymore against anyone. And it was raised as an affirmative defense and not a comfort claim in the original suit. That's correct. And here it's just because there is an alternative ground, and so we made sure that we had it in the cross-appeal. With respect to the remainder of your Honor's arguments, I want to make sure that I can help us reframe because I absolutely agree with the question, which is why didn't their expert tie this all up? Why isn't there some evidence tying these things together? What we have here is nothing more than a conglomeration of attorney argument about broad, high-level documents. In every instance, the documents that are being referred to, they say, oh, that shows you everything that's there. That doesn't show any other paths. But these documents are high-level documents describing at a sense of generality. I mean, the title of the document, if you go back to Appendix 14-279, is Timeline in a Nutshell. In other words, it's not every single thing that ever happens here or that we're talking about. But that's attorney argument, what you just said. I mean, you're here to argue. I get it. But why isn't this a jury issue as to whether or not Timeline in a Nutshell is comprehensive or is merely general? I have two answers to that, Your Honor. The first answer is that you're not supposed to give every single inference of anything that could ever happen. Every reasonable inference. Every reasonable inference. And they have to be reasonable inferences, and they still have to be supported by something other than attorney argument. All we've heard regarding these documents is attorney argument. The expert did not say, and therefore that shows that every single item is there. They focused only on the words in this document. The biggest problem is this document never once addresses what's coming into the aggregator writ large. Never once is coefficient described anywhere in this document at all. Coefficient is one of the items of information that comes into the aggregator. It's undisputed that it comes into the aggregator. Their only argument was that it's not a unit of interest, direct interest to the party, or that somehow it's a query. It's not a query, even if you were to reach that. The evidence that they pointed to was a deposition testimony that was highly ellipsed. And in its ellipsing out, and this is on page 14161, the information that was ellipsed out shows that the aggregator receives coefficient from coefficient 2 system. Among other information, and it uses that information to construct. Where are you on 14161? I'm on 1461. Which page is it? Testimony. Page 71, which is the bottom right-hand quadrant. 77 maybe. Page 77, so 1461, page 77. And if you see starting at, for example, line 12, the quote was that we will get a request which includes the ellipsed out, the above-mentioned user data, and it will list, that was ellipsed, back to all of major life events we get from tau, the coefficient they ellipsed out we get from the coefficient 2 system, which is outside of the aggregator and the timeline database. And a bunch of other necessary data, this was ellipsed out, to help the aggregator construct the final request. Sorry, the final response. And this information will be sent to timeline aggregator, also ellipsed out, and some of the information there will be then used to input to the query. So that statement was the witness saying all of the coefficient data, the major life events, these are information that is received by the aggregator in order to create this query. This is a Facebook witness? This is a Facebook witness. That is correct. And the only way that they could try to argue that somehow this was just information coming from somewhere else was to ellipses out the appropriate facts. That's even worse than just attorney argument. But I would also point your honors, because I think it's very important, to the intellectual science and technology case. This is intellectual science and technology versus Sony, 589, F3rd, 1179, and specifically at 1184. In that case... Is that us or some other court? That's you, your honors. In fact, it was Judge Rader, Archer, and Gallarza in 2009. In that case, in order to attempt to defend against a grant of summary judgment of non-infringement, the plaintiff in that case had put forward a copy of a diagram depicting a circuit. And the attorney argument was simply that circuit shows that all the circuits are going to be like the circuit that we're accusing. The problem is the attorney never tied anything about what was actually in that document back to the claim language of each and every. That case is highly on point to this case. And the court specifically held that simply pointing to a multiplexer alone was insufficient to then infer that all circuits like that would have the required claim limitations. Here we have the exact same problem. They're pointing to documents that don't have all of the information. None of these documents overcome the fact that coefficient data is received into the aggregator and never falls over into the timeline database. Never. That's an unrebutted fact produced through Facebook's witnesses. And it's also important to note that the Facebook witnesses who testified, in this case, coefficient data, you can find at appendix 8158, paragraph 12, as well as news feed. Actually, you probably don't even need that. So the coefficient data, it's unrebutted that it shows up in the aggregator and never shows up in either the leaves or the timeline database. And that's in none of the documents that were proposed to add inferences. So right away, there's an absolute missing hole for everything. The testimony you cited to us is listed as confidential in the appendix. All of those confidential markings. So the confidentiality is just because it's discussing the rest of that deposition is discussing source code. But the portions that you relied on are not confidential. I don't believe so, no, Your Honor. And it's your witness. That's fine, yes. The yellow brief directs us to 14-273. I don't think this is a document we've talked about before. They argue that yellow at 11, a reasonable juror could conclude that the references to timeline data in that document means all data for timeline and that it persisted in timeline database means that it was stored in the timeline back end. You understand it better than I do, but why is that not a possible reasonable inference a juror could draw? Okay, so just as... Can you just give the ASAP? 14-273. Again, 14-273, and it appears as this document which has a figure on the top and then storage. And Judge Post mentions this is also marked confidential. Can we talk about it? We are absolutely okay to talk about it, Your Honor. And again, because most of these documents are relatively high level. Some include some snippets of source code, but we haven't touched any of that, so no problem. So the reason that that is not an appropriate inference here is that timeline, unlike what my learned colleague said, the timeline back end system is larger than simply the timeline database and the aggregator. They chose only the timeline aggregator and the timeline database to be the computer system that they were trying to find, but the timeline back end receives information from numerous other places. I mean, even here in the document above, it shows Webby, Memcache, Tau, and that's not everything. There also is a UDB. There are numerous other sources of information, including coefficient, which we've talked about, and it's unrebutted in the coefficient feedback. So it's true that there are these other bubbles, Memcache, Webby. What tells us that they are part of timeline, as opposed to somewhere else that timeline takes information from? Yes, that's correct. But see what happens with it, so the timeline database is only one piece of what goes into your timeline. As was discussed in the declaration, timeline is a system that in order to construct a user's timeline, the front end says, hi, I want my timeline, sends a request that we talked about just a minute ago saying who the user is, and that request includes the user. The aggregator receives that information and then uses that information to construct numerous requests, some to go get information, for example, from Tau, which might include photos, to get information from coefficient about what things are more important to you, to get all sorts of other information, which is then brought together, and this is the quote that I was directing you to from the deposition, that is then used to create a request which is forwarded to the timeline database. And so when they simply say timeline data is persisted in timeline database, we don't dispute that. Timeline data is persisted in the timeline database. But there's also coefficient data that is not persisted in the timeline database. If the document had said all information used by the back end timeline system is persisted, they may have an argument, but they don't. Timeline data is in the timeline database, not disputed. But coefficient data, which also goes into the aggregator, is not in the timeline database. Major life events, which also goes into the aggregator, not a part of the timeline database. And so that's what Judge Kodal took exception with, was that they're seemingly having to rewrite the document to say, all information in the timeline back end is persisted in timeline DB, and that doesn't happen. The judge addresses this at appendix 50 in his order down below. He wasn't weighing evidence. He was just saying it doesn't say what it says. Just say again why, for example, coefficient data is not, oh, you said it is timeline data? No, coefficient data is coefficient data. It is not timeline data. Even though the timeline back end system makes use of it. Absolutely. You can use data that is not itself timeline data. For example, the way the Facebook system works, and I think undisputed, is Facebook users can take actions. When I log into Facebook and post something, that becomes timeline data. That's something that I've done. That's an action that is stored in the timeline database. However, there are other things that happen where I'm not interacting with Facebook. For example, if I got married, Facebook doesn't know what I did off of Facebook. There's a whole separate section within Facebook called Life Events, where you can input what happened to you that day. That's a separate section of Facebook. You can input those major life events. They're not part of the timeline database, but when Facebook constructs a timeline, you wouldn't want the fact of your marriage to be missing just because it didn't happen on Facebook. It reconstructs it that way. Coefficient, similarly, is a system that is used by multiple parts of Facebook. The whole point of coefficient is to understand how you're interacting with all of your other friends, so that if Facebook wants you to stay on the site longer, it's going to show you more information with the people you interact with the most. That's what coefficient does. It calculates those scores, and it uses those scores to make sure it gets the right information. Those are all fed into the aggregator so that it can build the appropriate machine. That's all undisputed. Their only argument against coefficient was that it somehow wasn't a data unit because it was just a score, or that it wasn't of user interest, or somehow it's a query. None of those are true. Unrefuted deposition testimony. You agree that even the query part, let alone the user direct interest, is part of the argument about claim construction on data unit. If we agree with you and disagree with Mr. Lindau on that, then there's no separate argument about the facts regarding coefficient data. That's absolutely correct, Your Honor. In fact, their only argument on coefficient, I don't believe they have any arguments other than, I think I heard him say, our expert talks a lot about code. But again, there, he never, in that report or any citations that are in any of the briefs, ties that back to the claim language to actually say, and this is why that's not there. Because the truth is, coefficient is in the aggregator, and they can't refute that. They haven't refuted that. They just say, but it's not the right type of information. So the various paragraphs, like 13, 10, 26, and so on, with the usual longish names of code components, none of that you say would be capable of being reasonably read to cover the coefficient data. It does not. And similarly, Your Honor, even if it were, it is not explained. Therefore, they have no one who can explain why that would be the case. And so there's no reasonable inference to be drawn because the expert can't just rattle off a bunch of information and then not tie it back to the issue. And that becomes attorney argument then, and that's the fairing case that we cite also. The district court has statements throughout the opinion that certain evidence is unequivocal, and sentences, at least, that I fear seem like they're sort of fact-finding, as opposed to just saying, could a reasonable fact-finder come out this way? Do you have anything to say about that? I think I understand what Your Honor is saying, but I actually think if you read those all in context, they're actually not weighing the facts at all. They're just literally looking at the words of the document and seeing whether the words of the document say what they want it to say, in terms of the documents that were presented. What you noticed in the district court's opinion, especially on page 50 and I think 51, he comments that they had to change the language of the document in order to make the argument that they were making, and those were the types of points. I don't think that's weighing evidence. That's just saying what the evidence actually says. And in terms of crediting our witnesses, there was simply nothing discrediting those witnesses. They didn't have anyone come in and say, but I see this in that database, and this is, you know, the coefficient data does show up here in the timeline database. There is zero evidence of that. And I note that I'm out of time. I don't know if Your Honor is wanting me to discuss 101 or not. No, we'll take it on the papers. Very much appreciate it, Your Honor. I want to return to a couple of points that my friend addressed during the argument. And I'll start with a question that Judge Stark posed a few moments ago about some of the district court's comments about the evidence being unequivocal and suggesting that it might reflect fact-finding and weighing of evidence. I think there's a portion of the opinion that makes that extremely clear. The district court, in discussing this court's prior decision in this case, talked about how this court remanded after finding that there was evidence in the record from which a reasonable trier of fact could conclude that the TAO system did not provide information to the timeline back-end system. And that, as a practical matter, that meant summary judgment was inappropriate. The district court interpreted that, and said it was interpreting that, to basically mean, well... What are you referring to? Do you have a... A citation? A citation, yeah. Yes, let me find a page. It was... Sorry, I think it's in a different... So, I think it's at... Page 55 of the appendix. Excuse me. Where the district court basically said that it characterized this court's decision as having found that Facebook failed to provide, quote-unquote, definitive evidence. There's no such thing as definitive evidence on summary judgment. If there's a conflict or dispute that goes to a fact issue, you don't get to resolve that by saying, well, if you put in another declaration, I get to decide that two declarations is better than one, or that those two pieces of evidence outweigh the other one. That's the wrong summary judgment inquiry. But that's what the district court admitted it was doing here, was looking for the wrong kind of material and applying the wrong standard. What's your response on the coefficient argument? Sure. So, I think two things. First, the evidence we talked about and the portions of the expert's declaration starting at page 13. I think it's 13291 and carrying over to 292, starting at paragraph 82 of the expert's report. And then there are a number of subsequent paragraphs where he talks about all of the things that come to the back-end system. And I think part of the problem we're having here is the same one the court addressed the last time, which is the improper sort of mixing of the front-end and the back-end and suggesting that somehow we treat them the same or that Facebook would prefer to treat them the same. In reality, the front-end system does a lot of the things that my friend talked about. That's not to say that the back-end does it, and the evidence doesn't show that the back-end is what's doing it. I want to understand what your expert says about what happens to the coefficient at the back-end. Do I look at 13291 or somewhere else? That, and I would say, regrettably, it's several pages following that. He doesn't talk about coefficient in the specific way that I think you're asking. He talks about the system broadly and how the system doesn't receive other information than what is stored in the database. So then just at a high level, what's your response to, well, how is he going to explain it if we let you put him in front of a jury? Sure. So he's going to explain it that what they're saying is coefficient gives this information to formulate the request back to the database. But the documents don't show that. The documents he points to, which are the same ones I was discussing during the earlier portion of the argument, the presentations, the design documents, et cetera, don't say that coefficient information is coming to the system. Now, we can't necessarily expect that design documents are going to say all the things that don't happen. That's kind of an odd thing to ask for in a design document. But they say what does happen, and they don't point to the things that Facebook's arguing here. And that's evidence that the jury could accept and say, well, if that was really happening, wouldn't they have put it in their design documents? Wouldn't they have put it in this material that purports to show how the system works? I would also add that the testimony that my friend referred to from their witness at page 8158, if you look at that and that declaration as a whole, one thing is very notable. There are no citations to Facebook code, to Facebook design documents, to Facebook material of any kind. It's a declaration standing alone that just says, this is what happens. I'm not going to show you any evidence that it's actually true. Thank you. We thank both sides.